NATIONAL BRAKE CO., Inc., et al. v. ACKLEY.

(Supreme Court, Equity Term, Erie County. March, 1913.)

1. PATENTS (§ 202*)—CONTRACT OF ASSIGNMENT—CONSTRUCTION.

Under a contract whereby defendant assigned his interest in certain patents and his holdings in a brake company, and agreed, for a valuable consideration, that he would not sell geared brakes in certain countries, he had no right to sell in such countries a geared brake which he patented several years later as a new device, although it was very different from other brakes, and though the contract could not deprive him of his right to patent the new brake.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 281–289; Dec. Dig. § 202.*]

2. PATENTS (§ 202*)—CONTRACT OF ASSIGNMENT—CONSTRUCTION.

Under a contract whereby a person agreed that for a term of years he "would not, directly or indirectly, sell, license or manufacture, deal in or become connected, directly or indirectly, with any person * * * selling * * * or manufacturing any geared brakes" in certain countries, "it being the intention" that the other contracting party "shall own and control without interference from, and with all protection from," the seller "the sale of geared brakes for use" in such countries, he had no right to sell to others a patent secured by him several years later on a geared brake for use in such countries.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 281–289; Dec. Dig. § 202.*]

Action by the National Brake Company, Incorporated, and others against Griffin S. Ackley. Judgment for plaintiffs.

Joseph G. Dudley, of Buffalo, for plaintiffs.
Coatsworth & Diebold, of Buffalo, for defendant.

POOLEY, J. This is an action for an injunction against the defendant to restrain him from directly or indirectly selling, licensing, manufacturing, or dealing in any geared brakes in the United States, Canada, Mexico, and Hawaii.

The plaintiffs Miller and Brewster and the defendant, Ackley, were stockholders in the plaintiff National Brake Company, which company was engaged in the manufacture and sale of geared brakes under certain patents of defendant, Ackley. On December 15, 1909, these individuals entered into a contract, dated that day, whereby Ackley sold to Miller & Brewster all his holdings in the National Brake Company for $30,000, and by this contract Miller and Brewster agree that for a period of 10 years they will not, directly or indirectly, sell, license, manufacture, or deal in any geared brakes of any description outside of the United States, Canada, Mexico, Hawaii, or the Phillipine Islands, or for use in any such countries, and in the Phillipine Islands they shall not sell or have any interest in the Ackley adjustable brake.

On the same day an agreement was made between the National Brake Company and said Ackley, whereby, in the language of the agreement, it was—

"the intention of this instrument that the party of the first part (National Brake Company) shall own and control, without interference from, and with

all protection from, the party of the second part (Ackley), the sale of geared brakes for use in the United States, Canada, Mexico and Hawaii, and that the party of the second part shall own and control without interference from, and with all protection from, the party of the first part, in all countries of the world, except for use in the United States, Canada, Mexico and Hawaii."

This agreement provides also for the assignment from Ackley to the company of patents on geared brakes in the United States, Canada, and Mexico; Ackley retaining all other foreign patents. These two contracts, in short, constituted a valid agreement dividing territory between the parties; each agreeing not to interfere with and to protect the other. It may readily be seen that each had a large territory for development, and the contract provides in detail for the carrying out of the agreement; the parties working in harmony.

This geared brake is a device used upon street railway cars, and is mainly handled by the motorman at the front end of the car. Its mechanism includes a combination of geared wheels, the operation of which accelerates and increases the braking power upon the car. This appears to be the valuable part of the device, as distinguished from the old style of simply winding the brake chain around the shaft or staff revolved by the operator.

I gather from the evidence that this type of brake is generally in use, and the supply of it to the various car lines constitutes a large and lucrative business. There is nothing in the record which indicates that the rights of the public are in any manner injuriously affected, and it appears that there are other types of brakes in use, so that the division of territory was a good business proposition for all concerned for the brakes controlled by these parties, and was apparently undertaken by them in good faith, and they continued along the lines laid down by these contracts for a considerable period.

But in 1911 Ackley, claiming to have invented a new device, applied for patents thereon in the United States and Canada, and had indicated a determination to sell them if the plaintiffs did not desire to negotiate for them, and placing a price of $50,000 upon them. This new device was termed a no-staff brake. It is a geared brake, but it dispenses with the shaft or staff which, in the ones used by plaintiffs, extends from the lever handled by the operator perpendicularly downward through the floor of the car to the geared mechanism under the car. In the new device the geared mechanism is directly beneath the hand of the operator, inclosed in an iron casing.

The plaintiffs complain of this introduction of the so-called no-staff brake into their territory, and charge that the sale of this device in their territory is a violation of the contracts between the parties.

[1] The defendant contends that these contracts do not prevent Ackley from inventing a geared brake, or from patenting it and selling the patent.

Of course, the contracts cannot prevent Ackley from inventing a new device. Invention is that subtle operation of the mind which many times, without apparent effort, creates valuable devices and appliances. It cannot be controlled, and operates spontaneously. Even if the invention is the result of extended thought and experiment, there is nothing in the contracts to prevent its creation, or the perfect-

ing of it in all its details. It is equally true that nothing in the contracts prevents the patenting of the new device. Indeed, this is the only way in which an inventor can protect his invention. Even if he is the true inventor, if he does not assert his claim to the invention, and another discovers the same thing and applies for a patent, the original and true inventor may be deprived of it. The discussion therefore narrows down to the inquiry: Having invented the new device and procured a patent for it, can Ackley sell the patent without violating his agreement? It is true that the contract provides for the purchase from Ackley of certain patents and applications for patents then pending, and that nothing is said about any future inventions Ackley might make. The plaintiffs therefore have no claim to ownership in any subsequent invention or patent of Ackley relating to geared brakes. Inventors are quite apt to think that the last word has been said when they patent their invention, and in making contracts often exclude the possibility of improvement and make no provision for any. Yet invention goes on; improvements appear which are sometimes of greater value than the original device.

But these contracts were carefully drawn, the consideration paid for the patents and the territory was a large amount of money, and the parties must abide by them. While plaintiffs cannot claim the right to use the new device, neither can the defendant invade the territory of the plaintiffs by selling a geared brake within it. The so-called no-staff brake is confessedly a geared brake. It has no staff in the sense that the staff or shaft extends through the floor to the geared mechanism underneath. Yet in another sense it has a staff or shaft for the purpose of transmitting the power from the lever to the gears, and it has a metal casing extending from the floor to the hand of the operator, which answers the purpose of the staff for the convenient handling of the mechanism. What seems to me to be the main fixture is the shifting of the geared mechanism from the position under the floor to the point immediately under the hand of the operator, thus avoiding the torsion of the long shaft and affording the more immediate and direct application of the power. Whatever its purpose or advantage, the device is still a geared brake, and thus comes within the purview of the contract. If Ackley has conveyed to the plaintiffs the right to manufacture and sell geared brakes covered by the patents stated in the contract, and has also agreed that he will not sell a geared brake of any description within plaintiffs' territory for the period of 10 years, he cannot lawfully sell this new device in this territory during that period, even although it is entirely different, so long as it is a geared brake.

[2] Moreover, he cannot sell the patent for the new device to others for use in this territory, because he has expressly agreed that—

"he will not for a term of ten years from January 1, 1910, directly or indirectly, sell, license or manufacture, deal in or become connected, directly or indirectly, with any person, firm or corporation selling, licensing, dealing or manufacturing any geared brakes of any description in the United States, Canada, Mexico and Hawaii, except for export, as hereinafter provided, nor shall he enter into any agreement in which his name is to be used, directly or indirectly, with the manufacture, lease, or license of said geared brakes for use in the United States, Canada, Mexico and Hawaii; it being the in-

tention * * * that the party of the first part (National Brake Company) shall own and control, without interference from, and with all protection from, the party of the second part, and sale of geared brakes for use in the United States, Canada, Mexico and Hawaii."

It seems to me that there can be no question but that the minds of the parties met clearly and unmistakably upon the proposition that, as between themselves, the plaintiffs would not be interfered with in any way by the defendant; that he would not, directly or indirectly, permit any one within his control to interfere with the plaintiffs.

The transfer of the patents for the new device is entirely in the control of the defendant. It would be idle to say, in view of the contract, that he cannot deal in this territory, and yet can assign the patents to some other person and permit him to do what the defendant has agreed not to do himself. It may be true that others are in the market with other devices, and that it is impossible for these parties to control all the brake business. But they have contracted with reference to devices that they do control, and to that extent they must fairly conform to their contracts.

It is urged against this conclusion that Ackley would not obtain any benefit from his invention. This would be true regarding plaintiffs' territory, but the rest of the world is open to him, and is of his own choosing. He would not be entitled to any benefits in plaintiffs' territory from any geared brake, because he had sold to the plaintiffs all rights or benefits within their territory upon geared brakes of any description, so far as he does or can control the business. The contract is definite; there is no uncertainty in the meaning or lack of mutuality in its terms. Diamond Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464; McCall v. Wright, 198 N. Y. 143, 91 N. E. 516, 31 L. R. A. (N. S.) 249.

The plaintiffs are entitled to judgment herein in accord with the views expressed, including, as far as possible, a resumption of the status as of the time of the execution of the contracts, with costs.